UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CECIL THOMAS and PAMELA THOMAS,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, *et al.*,<br><br>Defendants. | Case No. C17-1222RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS |

## I.  INTRODUCTION

This matter comes before the Court on Defendants Ocwen Loan Servicing, LLC's ("Ocwen") and Deutsche National Trust Company's ("Deutsche") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] Dkt. #25. These Defendants seek dismissal of all claims against them with respect to alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), and Washington State's Consumer Protection Act ("CPA"). *Id.* Plaintiffs oppose the motion. Dkt. #26. Having reviewed the record before it, and finding oral argument on the motion to be unnecessary, the Court now GRANTS IN PART and DENIES IN PART Defendants' motion. The Court further grants Plaintiffs leave to amend as set forth below.

---

[1] Defendant Quality Loan Service Corporation filed its Answer to the Complaint on July 23, 2018. Dkt. #30. The claims alleged against that Defendant are not at issue in the instant motion.

ORDER
PAGE - 1

## II.     BACKGROUND

This matter was filed by Plaintiffs Cecil and Pamela Thomas on August 14, 2017. Dkt. #1. On August 21, 2017, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO"). Dkt. #4. Plaintiffs allege that they are the owners of the home and land located at 15844 48th Ave NE, Woodinville, WA 98072. *Id.* Plaintiffs further allege that they completed a Chapter 12 bankruptcy plan that reorganized their mortgage loan, and that following completion of the bankruptcy plan Defendant Ocwen failed to account for payments, rejected payments, and commenced a foreclosure due to Ocwen's own errors. *Id.* Plaintiffs assert that despite the fact that they are current on their loan, Defendants scheduled a foreclosure on their home, which was originally to take place on August 25, 2017. Dkt. #6 at ¶ 12.

On August 22, 2017, this Court issued a TRO, restraining Defendants, and anyone acting in concert with them, from foreclosing on Plaintiffs' real property. Dkt. #9. The Court then set a hearing for a preliminary injunction on September 8, 2017. *Id.* Soon thereafter, Defendants Ocwen and Deutsche appeared in this action. Dkts. #11-15. The parties then entered into a stipulated Preliminary Injunction Order which restrains Defendants from proceeding with a foreclosure on Plaintiffs' property until the merits of this case are resolved. Dkt. #22.

In their Complaint, Plaintiffs allege the following factual background to their claims:

> 2. Plaintiffs are husband and wife and owners of the property commonly known as 15844 148th Ave. NE, Woodinville, Washington ("The Property") with a legal description attached as Exhibit A which they occupy primarily as their family residence and which they also maintain as the location of their business.[2]
>
> 3. On September 20, 2010 plaintiffs filed Chapter 12 Bankruptcy to reorganize the home loan ("The Loan") for which The Property was collateral.

---

[2] The Court notes that no Exhibit was attached to the Complaint when it was filed. *See* Dkt. #1.

ORDER
PAGE - 2

4. At the time plaintiffs filed Chapter 12 The Loan was serviced by OneWest Bank, FSB.

5. The Chapter 12 plan as approved by the judge required plaintiffs to pay the bankruptcy trustee payments that she would then forward to the lender for 60 months and upon completion of the Chapter 12 plan plaintiffs were directed to pay The Loan each month directly to the servicer.

6. The Chapter 12 plan stipulated to a value of $375,000 which became the balance of The Loan.

7. Plaintiffs have paid all amounts due under the Chapter 12 plan and have also sent the payments that were due to the lender on The Loan after the plan was complete.

8. On or about May 9, 2014 Ocwen Loan Servicing, LLC ("Ocwen") began servicing The Loan.

9. Deutsch Bank National Trust Co. ("Deutsch Bank") is the party that holds the promissory note signed by plaintiffs and has hired or consented to the hiring of Ocwen to service The Loan.

10. At the time Deutsh [sic] Bank employed Ocwen it had knowledge or it should have known that Ocwen had its banking charter revoked and that Ocwen used an accounting system that failed to accurately account for payments and charges to loans.

11. At the time Ocwen began servicing The Loan Ocwen alleged The Loan was in default.

12. Plaintiffs are not nor have been in default; rather Ocwen's accounting on The Loan is incorrect.

13. Plaintiffs have disputed the loan history with each of the defendants in this case.

14. Despite the dispute, the defendants have indicated that they intend to foreclose on The Property on August 9, 2017.

15. Plaintiffs have lived at The Property for 13 years and have no other place to live.

16. If The Property is foreclosed plaintiffs would lose their home and their fish hatchery business.

17. Plaintiffs have tendered all due payments to Ocwen; however, Ocwen rejected the payments and sent them back.

18. Ocwen has falsely reported to the credit reporting agencies that plaintiffs are delinquent on The Loan.

19. Ocwen knew that Ocwen's accounting system produced inaccurate information which was sent to the plaintiffs and the credit reporting agencies.

20. Despite knowing that Ocwen's accounting system produced inaccurate numbers, Ocwen persisted in mailing false statement to plaintiffs and furnishing false information about plaintiffs and to plaintiffs, the credit reporting agencies, the codefendants, and others.

21. Throughout 2017 plaintiffs have made written request to Ocwen which identified the loan, the property, the plaintiffs and indicated that the loan history was inaccurate and requested that Ocwen correct the accounting on the loan.

22. The plaintiffs written demands to Ocwen constitute Qualified Written Requests under the Real Estate Settlement Procedures Act.

23. Ocwen has failed to correct the accounting as requested by plaintiffs.

24. Ocwen has charged plaintiffs late fees and foreclosure costs despite the fact that plaintiffs are current on their Loan payments.

25. Ocwen requested that Quality Loan Service ("Quality") foreclose on The Property due to defaults that Ocwen alleged in The Loan.

26. Quality's principal purpose is foreclosing deeds of trust and other security interests in consumer's homes.

27. Upon information and belief the attorneys and other employees of Quality have access to Ocwen's accounting system and had the ability to review the loan history.

28. Quality has served notice of a nonjudicial foreclosure and indicated it intends to foreclose on The Property.

29. Plaintiffs wrote to Quality Loan Service and requested that Quality stop the foreclosure.

30. Quality has refused to provide any indication that it would stop the foreclosure sale.

31. Plaintiffs have written to Deutsch [sic] Bank asking it to stop the foreclosure; however, it has refused.

32. Due to defendants' conduct plaintiffs have suffered damages in the form of credit damage, lost business income, upset, worry, frustration, anger and other damages.

Dkt. #1 at ¶¶ 2-32.

Plaintiffs now bring claims against Defendant Ocwen for violations of the FDCPA, RESPA and Washington's CPA (Claims One, Three and Six); and against Defendant Deutsche for Negligence and violation of Washington's CPA (Claims Five and Six). Dkt. #1 at ¶¶ 34-36, 40-42, 46-48 and 49-52. Defendants seek judgment in their favor on each of those claims.

### III. DISCUSSION

**A. Standard of Review**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same legal standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Thus, the Court must accept as true all material facts alleged in the pleadings and draw all reasonable inferences in favor of the nonmoving party. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

///

///

## B. Waiver

As an initial matter, the Court addresses Plaintiffs' assertion that Defendants have waived the arguments made in the instant motion by stipulating to a likelihood of success on the merits in the Stipulated Preliminary Injunction. Dkt. #26 at 17. The Court is not persuaded. The Stipulated Preliminary Injunction specifically states that the parties made such stipulation "[f]or purposes of determining whether a preliminary injunction should issue and only for such purposes. . . ." Dkt. #22 at 2.

## C. Standing

The Court next turns to Defendants' argument that the Complaint must be dismissed because Plaintiffs fail to establish Article III standing. Dkt. #25 at 10-11. To establish Article III standing, plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Under Article III's injury in fact element, Plaintiff must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1549. However, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* Accordingly, *Spokeo* distinguishes between "bare procedural violation[s]" and violations that "cause harm or present any material risk of harm." *Id.* at 1549-50.

In this case, the Court finds that Plaintiffs have standing to bring their claims. Plaintiffs started this suit after a foreclosure notice was issued, and Defendants admit that a notice of trustee's sale was recorded on April 11, 2017, in King County, WA, noticing a trustee's sale scheduled for August 11, 2017. Dkts. #1 at ¶ 14 and #24 at ¶ 14. Defendants then stipulated to a preliminary injunction to enjoin the foreclosure. Dkt. #22. "[S]tanding is determined as of the commencement of litigation." *Yamada v. Snipes*, 786 F.3d 1182, 1203 (9th Cir. 2015) (quoting *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1171 (9th Cir. 2002) (brackets omitted)); *see also Lujan*, 504 U.S. at 569 n.4 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 839, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989)). Thus, Plaintiffs have satisfied the requirements for Article III standing in this action.

**D. Plaintiff's Complaint**

*1. Claim One*

The Court now turns to the claims raised in Plaintiffs' Complaint. In Claim One of their Complaint, Plaintiffs allege that Defendant Ocwen violated the FDCPA by failing to account properly for the payments it received, charging fees and costs that are not owed, and falsely publishing Plaintiffs' account status to credit reporting agencies, Plaintiffs themselves, and to the other Defendants in this action. Dkt. #1 at ¶ ¶ 34-36. Defendant Ocwen argues that this claim must fail because: 1) Ocwen is not a debt collector under the Act, 2) foreclosure-related activities are not considered to be "debt collection" under the Act, and 3) Plaintiffs have made no allegations of deceptive or unfair collection activity. Dkt. #25 at 4-6. The Court disagrees with Defendants.

Defendant Ocwen first asserts that the FDCPA does not apply here because it is not a "debt collector" under the statute. Dkt. #25 at 4-5. A defendant to an FDCPA claim must be a "debt collector" within the statute. *Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). Under 15 U.S.C. § 1692a(6), "debt collector" means:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . The term does not include—
>
> . . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

In interpreting this definition, courts have consistently held that the FDCPA does not apply to mortgage servicing companies, or assignees of the mortgage debt, if the debt was not in default at the time the debt was obtained. *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1721, 198 L. Ed. 2d 177 (2017). Thus, an entity that did not originate the debt but acquired it and attempts to collect it is "either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." *Perez v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 170425, 2015 WL 9286554, at *2 (E.D. Cal. Dec. 21, 2015). "The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default . . . occurred." *Id.*; *see also Justice v. Ocwen Loan Servicing, LLC*, 2014 U.S. Dist. LEXIS 15800, 2014 WL 526143, at *4 (S.D. Ohio Feb. 7, 2014) ("In other words, if Ocwen acquired the servicing for the Loans before

ORDER
PAGE - 8

they were in default, then it is not a debt collector under the FDCPA. But if Ocwen acquired the servicing for the Loans after they were in default, it is a debt collector under the FDCPA."); *Amini v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 64576, 2013 WL 1898211, at *4 (W.D. Wash. May 6, 2013) (a mortgage servicer is a "'debt collector' if the debt was in default when it took over the servicing obligations," even if the ownership of the loan remains with the original lender). Based on Plaintiffs' allegation that they were not in default at the time Ocwen began servicing their loan, Ocwen now argues that it was a creditor, not a debt collector, at the time it began servicing Plaintiffs' loan. The Court finds this argument to be disingenuous at best.

The Court notes that Plaintiffs specifically alleged that, at the time Ocwen began servicing the loan, Ocwen itself alleged the loan was in default. Dkt. #1 at ¶ 11. Ocwen admitted this allegation in its Answer to the Complaint. Dkt. #24 at ¶ 11. Ocwen also denied Plaintiffs' allegation that they were not and are not in default. Dkt. #24 at ¶ 12. Moreover, other federal courts have rejected the identical argument made by Defendant Ocwen:

> Further, we find disingenuous Ocwen Bank's argument that "Ocwen also is not a debt collector because servicing transferred to Ocwen on May 1, 2002, and Plaintiffs themselves allege that the account was not in default at that time." We note this argument is exemplary of an unsettling trend in FDCPA claims. Defendants seek to have it both ways: after having engaged in years of collection activity *claiming a mortgage is in default*, Defendants now seek to defeat the protections of the FDCPA by relying on Plaintiffs' position throughout those years that the *mortgage is not in default*. As noted in the analysis of the Third Circuit, FDCPA coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended.

*Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) (citations omitted, emphasis in original). Accordingly, the Court will not grant Defendants' motion on this basis.

ORDER
PAGE - 9

Defendants next argue that foreclosing on a property through a deed of trust is not the collection of a debt under the FDCPA, and therefore any efforts it took to foreclose cannot be a violation of the statute. Dkt. #25 at 5-6. The Court disagrees in part.

"The FDCPA imposes liability only when an entity is attempting to collect debt. For the purposes of the FDCPA, the word 'debt' is synonymous with 'money.'" *Ho v. ReconTrust Co., NA*, 840 F.3d 618, 621 (9th Cir. 2016) (citing 15 U.S.C. §§ 1692a(5), 1692(e)). The object of foreclosure, however, is to retake and resell a security, not to collect money. *Id.* Indeed, "'foreclosing on a deed of trust is an entirely different path' than 'collecting funds from a debtor.'" *Id.* at 621 (quoting *Hulse v. Ocwen Fed. Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)). Thus, the FDCPA applies to foreclosure activities only through the limited provisions of Section 1692f(6). *See Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 990 (9th Cir. 2017) ("[W]here an entity is engaged solely in the enforcement of a security interest and not in debt collection . . . it is subject only to § 1692f(6) rather than the full scope of the FDCPA."). Section 1692f(6) prohibits, in pertinent part, the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A); *see Ho*, 840 F.3d at 622.

Plaintiffs allege in their Complaint that Ocwen violated the FDCPA by "failing to account properly for the payments it received, charging fees and costs that are not owed, [and] falsely publishing the plaintiffs' account status to the credit reporting agencies, the plaintiffs and the other defendants . . . ." Dkt. #1 at ¶ 35. They also plead that Ocwen noticed a foreclosure despite the fact that Plaintiffs were not in default and had been tendering payments. Dkt. #1 at ¶ ¶ 11-14 and 17. From these facts, the Court can reasonably infer that Ocwen (and Deutsche as Trustee)

did not have a present right to possession of the property at issue. Consequently, the Court can reasonably infer Ocwen's foreclosure actions to be within the provisions of Section 1692f(6). Therefore, the Court will not dismiss Plaintiffs' FDCPA claim.

Finally, Defendant Ocwen argues, without citing any legal authority, that Plaintiffs' claim must be dismissed because the Complaint lacks any allegations of unfair or unconscionable debt collection activities. Dkt. #25 at 6. The Court is not persuaded. The FDCPA specifically prohibits "unfair or unconscionable means" in connection with non-judicial foreclosures:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, *the following conduct is a violation of this section*: . . .
>
> Taking or threatening to take any *nonjudicial action to effect dispossession or disablement of property* if —
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C.A. § 1692f(6) (emphasis added). Defendants do not explain why this provision, which by its terms plainly applies to non-judicial foreclosures, does not mean what it says. The Court therefore declines to dismiss the FDCPA claim against Ocwen.

   *2. Claim Three*

In Claim Three of their Complaint, Plaintiffs allege that Defendant Ocwen violated RESPA by failing to correct Plaintiffs' loan information after Plaintiffs' written request. Dkt. #1 at 41. Defendants seek dismissal of this claim on the basis that Plaintiffs fail to plead facts sufficient to show that the sent a Qualified Written Request. Dkt. #25 at 6-7. The Court agrees.

In pertinent part, RESPA requires "loan servicers" to respond to certain types of borrower inquiries regarding the servicing of a loan, including a "qualified written request," (known as a "QWR"), within 60 days. 12 U.S.C. § 2605(e). RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-(I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). In the instant matter, Plaintiffs alleged that, after May 9, 2014, when Ocwen began servicing the loan, they disputed their loan history, and throughout 2017 they made written request to Ocwen which identified the loan, the property, indicated that the loan history was inaccurate and requested that Ocwen correct the accounting on the loan. Dkt. #1 at ¶ ¶ 8, 13 and 21. However, they fail to allege whether they received responses from Ocwen, when they received those responses, and whether the responses were within 60 days of their written requests. Thus, the Court agrees with Defendant Ocwen that the claim must be dismissed. However, as further discussed below, the Court will allow Plaintiffs to amend this claim.

*3. Claim Five*

In Claim Five of their Complaint, Plaintiffs allege that Defendant Deutsche is liable for negligence because it:

> a. Fail[ed] to properly instruct Ocwen on how to operate as a loan servicer and to perform the duties as required under the note and trust deed;
>
> b. Employ[ed] Ocwen when Ocwen was incompetent to perform the work entrusted to it;
>
> c. Fail[ed] to inspect the work of Ocwen to ensure the work was done in a reasonable manner; [and]
>
> d. Fail[ed] to provide necessary precautions to ensure that Ocwen's work would be performed without injuring plaintiffs and those similarly situated.

ORDER
PAGE - 12

Dkt. #1 at ¶ 47. Defendants argue that this claim should be dismissed because Plaintiffs fail to demonstrate a duty owed by Deutsche to the Plaintiffs and because the independent duty doctrine bars recovery in this case. Dkt. #25 at 7-8. The Court agrees.

A cause of action for negligence requires the plaintiff to establish: (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 875 P.2d 621, 624 (Wash. 1994). There are two elements to proximate causation: cause in fact and legal causation. *Tyner v. State Dep't of Soc. & Health Servs., Child Protective Servs.*, 141 Wn.2d 68, 1 P.3d 1148, 1155-56 (Wash. 2000). Causation in fact refers to the actual, "but for," cause of the injury. *Id.* at 1156. Legal causation is grounded "in policy determinations as to how far the consequences of a defendant's acts should extend." *Id.* (internal quotations and citations omitted). The focus in legal causation analysis is on "whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." *Id.* (internal quotations and citations omitted).

Here, Plaintiffs do not plead sufficient facts to make out a negligence claim. Do not identify a source of the duties it seeks to impose on Defendant Deutsche with respect to Ocwen. While the Court recognizes that Deutsche, as holder of the deed of trust, has a duty of good faith to Plaintiffs, Plaintiffs do not plead such a duty in their Complaint. *See* RCW 61.24.010(4) ("The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."); *Bain v. Metropolitan Mortg. Group, Inc.*, 175 Wn.2d 83, 285 P.3d 34, 39 (Wash. 2012) ("Trustees have obligations to all parties of the deed, including the homeowner."). Thus, the Court agrees with Defendant Ocwen that the claim must be dismissed. However, as further discussed below, the Court will allow Plaintiffs to amend this claim.

ORDER
PAGE - 13

*4. Claim Six*

In Claim Six of their Complaint, Plaintiffs allege that Defendants Ocwen and Deutsche have violated Washington's CPA. Dkt. #1 at ¶¶ 49-52. Defendants argue that this Claim should be dismissed because Plaintiffs have failed to allege any unfair or deceptive act or practice as to any Defendant, Plaintiffs fail to allege any conduct by Defendants that impact the public interest, and Plaintiffs do not include sufficient facts to establish causation. Dkt. #25 at 8-10. The Court agrees.

In response to the motion, Plaintiffs describe conduct allegedly taken by Ocwen, but still does not differentiate between Defendants. *See* Dkt. #26 at 14-16. Further, in their Complaint, Plaintiffs simply allege that each of the Defendant's conduct is a *per se* violation of the CPA, but does not explain the authority for that assertion in response to Defendants' motion. *Id.* Moreover, Plaintiffs do not identify conduct that affects the public interest. Thus, the Court agrees with Defendant Ocwen that the claim must be dismissed. However, as further discussed below, the Court will allow Plaintiffs to amend this claim.

**E. Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court has identified deficiencies for which it has dismissed Plaintiffs' Third, Fifth and Sixth claims. However, given that some of Plaintiffs' arguments in response to the instant motion appear to differ from the way the claims are set forth

in the Complaint, Plaintiffs shall have the opportunity to correct those deficiencies should they believe they can do so, through the filing of an Amended Complaint.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Defendants Ocwen's and Deutsche's Motion for Judgment on the Pleadings (Dkt. #25) is GRANTED IN PART as discussed above.

2) Plaintiffs may file an Amended Complaint **no later than fourteen (14) days from the date of this Order**. Should Plaintiffs choose not to file such a complaint, their current Claims Three, Five and Six will be dismissed with prejudice.

3) Nothing in this Order precludes Defendants from moving to dismiss any Amended Complaint should they believe such action is warranted and legally supported.

DATED this 26th day of July, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE