# EXHIBIT A

# ADJUSTABLE RATE NOTE
## (12 MAT Payment and Rate Caps)

Loan # ████████

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

March 5, 2006                    Lynnwood                    ,    Washington
[Date]                             [City]                              [State]

15550 148th Ave NE, Woodinville, WA 98072

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 400,000.00                    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **IndyMac Bank, F.S.B., a federally chartered savings bank**

I will make all payments under this Note in the form of cash, check or money order.  I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of     1.250          %.  The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of          **May**               ,2006       , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than               9.950    %.

**(D) Index**

Beginning with the first Interest Rate Change Date, my Interest Rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" ("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

---

**MULTISTATE 12 MAT ADJUSTABLE RATE NOTE**

MIN: ████████
Initials: ___ ___ ___ ___ ___

8480185  (0508)                 VMP Mortgage Solutions, Inc. (800)521-7291

**Form 3003**
**8/05**

Loan No:

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **three and 650/1000ths** percentage point(s) ( **3.650** %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

3.   **PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **May 1, 2006** , . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **April 1, 2036** , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,333.01** . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the **1st** day of **May** , **2007** , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred **TEN AND NO/100THS** percent ( **110.000** %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

8480185  (0508)                     Page 2 of 6                     Form 3003
8/05

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of my monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

8480185   (0508)

Form 3003
8/05

Loan No: ████████

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 3/6/06  (Seal)     _____ 3-6-06 (Seal)
Cecil Thomas              -Borrower     Pamela Thomas              -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                              -Borrower

*[Sign Original Only]*

Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.
By: _____

Sam Lundstrom
Vice President

8480185   (0508)                    Page 5 of 5                    Form 3003
                                                                    8/05

## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #: ▉▉▉▉▉▉

THIS ADDENDUM is made this **5th** day of **March, 2006** , and is incorporated into and intended to form a part of an Adjustable Rate Note dated the same date as this Addendum.

1. **Section 5 of the Adjustable Rate Note is modified to provide that I have the right to make payments of principal at any time before they are due. A Prepayment of all of the unpaid principal is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal is known as a "Partial Prepayment."**

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first  three    ( 3    ) year(s) I make a Partial Prepayment or Partial Prepayment(s) of less than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will not pay a Prepayment penalty. However, if within the first    three ( 3    ) year(s), I make a Full Prepayment, Partial Prepayment or Partial Prepayments of more than twenty percent (20%) of the original principal amount in any 12-month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2. All other provisions of the Adjustable Rate Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_____ 3/6/06 (Seal)
Cecil Thomas               -Borrower

_____ 3-6-06 (Seal)
Pamela Thomas               -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

IndyMac Bank and Federally Exempted Seller Use Only
Hard Prepayment Addendum (1-3 yrs) - ARM
First Mortgages - Multistate, Arkansas (loans over $150,000)

8480279   (0407)                VMP Mortgage Solutions, Inc. (800)521-7291

SPD #084
(08/04)

# EXHIBIT B

1N06A4

**After recording please return to:**

IndyMac Bank, F.S.B. c/o Document Management

901 E. 104th ST . # B 400/500

Kansas City, MO. 64131
*[Company Name]*

*[Name of Natural Person]*

901 E. 104th Street Building B Suit«
*[Street Address]*

Kansas City, MO 64131
*[City, State Zip Code]*



200603100001131

FIDELITY NATIO DT          52.00
PAGE001 OF 020
03/10/2006 12:27
KING COUNTY, WA

Assessor's Property Tax Parcel or Account Number:   340770003002
Abbreviated Legal Description:   340770-0030-02

Tract 4, Hollywood Tracts
*[Space Above This Line For Recording Data]*

# DEED OF TRUST
INSURED BY       ∂°/53
FIDELITY NATIONAL TITLE      MIN   100055401227451665

**DEFINITIONS**

100870

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**   "**Security Instrument**" means this document, which is dated   March 5, 2006   , together with all Riders to this document.

**(B)**   "**Borrower**" is Cecil Thomas and Pamela Thomas, husband and wife

. Borrower is the trustor under this Security Instrument.

**(C)**   "**Lender**" is IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a   Federal Savings Bank   organized and existing under the laws of United States of America   . Lender's address is 155 North Lake Avenue, Pasadena, CA 91101

**(D)**   "**Trustee**" is Fidelity National Title Insurance Co.

**(E)**   "**MERS**" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security** Loan No:

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 1 of 14                    14301WA 88/00
www.compliancesource.com                                                                         ©2000, The Compliance Source, Inc.

**Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated      **March 5, 2006**        .
The Note states that Borrower owes Lender     **four hundred thousand and NO/100ths**
                                                    Dollars (U.S. $ **400,000.00**             )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **April 1, 2036** .

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) *[specify]* | | |

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Loan No:

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of          King                   :
            *[Type of Recording Jurisdiction]*                *[Name of Recording Jurisdiction]*

See Exhibit "A" attached hereto and made a part hereof.

which currently has the address of                    15550 148th Ave NE
                                                                *[Street]*

Woodinville                      , Washington          98072                ("Property Address"):
            *[City]*                                              *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Loan No:

# EXHIBIT "A"

## LEGAL DESCRIPTION

The Westerly 250 feet of Tract 6, as measured along the Southerly line thereof, HOLLYWOOD TRACTS, according to the Plat thereof recorded in Volume 20 of Plats, Page 98, records of King County, Washington.

Situate in the County of King, State of Washington.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender

Loan No: ▮▮▮▮▮▮▮▮

receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier

Loan No: ▓▓▓▓▓▓▓

providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Loan No: ▮▮▮▮▮▮▮▮

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be

Loan No:

non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be

Loan No: ████████████

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                          Page 8 of 14
www.compliancesource.com

MERS Modified Form 3048 01/01
14301WA 08/00
©2000, The Compliance Source, Inc

reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not

Loan No: ▇▇▇▇▇▇▇

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—   ‖‖‖‖‖‖‖‖‖‖‖‖   Page 9 of 14
www.compliancesource.com

MERS Modified Form 3048 01/01
1430IWA 08/00
©2000, The Compliance Source, Inc

be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such

Loan No: ████████████

other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Loan No: █████████

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

Loan No: ▓▓▓▓▓▓▓

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees", whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                             Cecil Thomas            -Borrower
                                                                     *[Printed Name]*

Printed Name: _____
                *[Please Complete]*

_____     _____ (Seal)
                                             Pamela Thomas           -Borrower
                                                                     *[Printed Name]*

Printed Name: _____
                *[Please Complete]*

                                             _____ (Seal)
                                                                     -Borrower
                                                                     *[Printed Name]*

                                             _____ (Seal)
                                                                     -Borrower
                                                                     *[Printed Name]*

———————————————————— *[Acknowledgment on Following Page]* ————————————————————

State of Washington )
                      §
                      § ss.:

County of   King           §

I certify that I know or have satisfactory evidence that     Cecil Thomas and Pamela Thomas

*[name of person]*

is the person who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 3-6-05

(Seal)

(Signature)

DEOLPD 698

(Title of Office)                           *[Printed Name]*

Kirkland

(Place of Residence of Notary Public)

Loan No: ███████████

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.— ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ Page 14 of 14
www.compliancesource.com

MERS Modified Form 3048 01/01
14301WA 08/00
©2000, The Compliance Source, Inc

## ADJUSTABLE RATE RIDER
### (12 MAT Payment and Rate Caps)

Loan #:    122745166

THIS ADJUSTABLE RATE RIDER is made this    5th   day of March          , 2006  , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to IndyMac Bank, F.S.B., a federally chartered savings bank

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
15550 148th Ave NE, Woodinville, WA 98072

[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
I will make all payments under this Note in the form of cash, check or money order.

## 2. INTEREST
**(A) Interest Rate**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of             1.250 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.
**(B) Interest Rate Change Dates**
The interest rate I will pay may change on the first day of May             ,2006  , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**MULTISTATE 12 MAT ADJUSTABLE RATE RIDER**
Page 1 of 5                                            **Form 3004**
8480194  (0508)      VMP Mortgage Solutions, Inc. (800)521-7291                **8/05**

**(C) Interest Rate Limit**

My interest rate will never be greater than        9.950        %.

**(D) Index**

Beginning with the first Interest Rate Change Date, my Interest Rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" ("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **three and 650/1000ths** percentage point(s) (      3.650    %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **May 1**     , 2006 . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on  **April 1, 2036**     , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $     1,333.01      . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of **May 1**     , 2007 , and on that day every 12th month thereafter. Each

Loan No: ▓▓▓▓▓▓▓▓

8480194 (0508)             Page 2 of 5             Form 3004
                                                                 8/05

of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

### (E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to one hundred **TEN AND NO/100THS** percent ( 110.000 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid Interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

### (G) Required Full Payment

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

Loan No: █████████

8480194  (0508)

Page 3 of 5

Form 3004
8/05

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan No: ██████████

8480194   (0508)                    Page 4 of 5                    Form 3004
                                                                    8/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
Cecil Thomas            -Borrower        Pamela Thomas           -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

Loan No: ████████

**8480194** (0508)                      Page 5 of 5                    **Form 3004**
                                                                       **8/05**

Fidelity National Title Company of Washington
ALTA Commitment, Page 2
Order No. 1000870

LEGAL DESCRIPTION:

The Westerly 250 feet of Tract 6, as measured along the Southerly line
thereof, HOLLYWOOD TRACTS, according to the Plat thereof recorded in
Volume 20 of Plats, Page 98, records of King County, Washington.

Situate in the County of King, State of Washington.

NOTE FOR INFORMATIONAL PURPOSES ONLY:
The following may be used as an abbreviated legal description on the
documents to be recorded, per amended RCW 65.04.  Said abbreviated legal
description is not a substitute for a complete legal description within
the body of the document.

Ptn Tract 6, HOLLYWOOD TRACTS

This property is located in King County.

Recording to be delivered to:
Fidelity National Title Co., 720 Olive Way #515, Seattle, WA 98101

After recording please return to:

IndyMac Bank, F.S.B. c/o Document Management

*[Company Name]*

*[Name of Natural Person]*

901 E. 104th Street Building B Suite 400/500
*[Street Address]*

Kansas City, MO 64131
*[City, State Zip Code]*

CERTIFIED TO BE
A TRUE AND EXACT
COPY

Assessor's Property Tax Parcel or Account Number:   340770003002
Abbreviated Legal Description:   340770-0030-02

———————— *[Space Above This Line For Recording Data]* ————————

# DEED OF TRUST

**DEFINITIONS**                                    **MIN**   100055401227451665

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**     **"Security Instrument"** means this document, which is dated
together with all Riders to this document.                            March  5, 2006

**(B)**     **"Borrower"** is Cecil Thomas and Pamela Thomas, husband and wife

. Borrower is the trustor under this Security Instrument.

**(C)**     **"Lender"** is  IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a             Federal Savings Bank
United States of America                                         organized and existing under the laws of
Pasadena, CA 91101              . Lender's address is  155 North Lake Avenue,

**(D)**     **"Trustee"** is Fidelity National Title Insurance Co.

**(E)**     **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security**

Loan No:

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                    Page 1 of 14
www.compliancesource.com                                                            MERS Modified Form 3048 01/01
                                                                                    14301WA  08/00
                                                                                    ©2000, The Compliance Source, Inc

**Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)     **"Note"** means the promissory note signed by Borrower and dated            March   5, 2006              .
The Note states that Borrower owes Lender    four hundred thousand and NO/100ths                                  .
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than      April   1, 2036 .

(G)     **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H)     **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)     **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) *[specify]* | | |

(J)     **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)     **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)     **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)     **"Escrow Items"** means those items that are described in Section 3.

(N)     **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)     **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)     **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Loan No:

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                      Page 2 of 14
    www.compliancesource.com

MERS Modified Form 3048  01/01
14301WA  08/00
©2000, The Compliance Source, Inc.

(Q)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of          King          :

        *[Type of Recording Jurisdiction]*                *[Name of Recording Jurisdiction]*

See Exhibit "A" attached hereto and made a part hereof.

which currently has the address of

Woodinville          , Washington          15550 148th Ave NE
    *[City]*                        *[Street]*
                        98072          ("Property Address"):
                        *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Loan No: ▉▉▉▉▉▉

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender

Loan No: ▮▮▮▮▮▮▮▮▮▮

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—      Page 4 of 14       MERS Modified Form 3048 01/01
www.compliancesource.com                                         14301WA 08/00
©2000, The Compliance Source, Inc

receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier

Loan No:  ▓▓▓▓▓▓▓

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—   ‖‖‖‖‖‖‖‖‖‖‖‖   Page 5 of 14                                        14361WA 08/00
www.compliancesource.com                                                                          ©2000, The Compliance Source, Inc

providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Loan No:

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be

Loan No: [redacted]

**Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—   Page 7 of 14—*Av*
www.compliancesource.com
MERS Modified Form 3048 01/01
14301WA 08/00
©2000, The Compliance Source, Inc

non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be

Loan No: ▉▉▉▉▉▉▉▉

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                    Page 8 of 14
    www.compliancesource.com

MERS Modified Form 3048 01/01
14301WA 08/00
©2000, The Compliance Source, Inc

reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not

be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such

Loan No: ██████████

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 10 of 14

MERS Modified Form 3048 01/01
14301WA 08/00
©2000, The Compliance Source, Inc.

other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Loan No: ▮▮▮▮▮▮▮▮

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

—THE COMPLIANCE SOURCE, INC.—                Page 11 of 14  AP

www.compliancesource.com

MERS Modified Form 3048 01/01

14301WA 08/00

©2000, The Compliance Source, Inc.

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. **Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

Loan No: ████████

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

—THE COMPLIANCE SOURCE, INC.—                                                    Page 12 of 14

www.compliancesource.com

MERS Modified Form 3048 01/01

14301WA 08/00

©2000, The Compliance Source, Inc

25. **Use of Property.** The Property is not used principally for agricultural purposes.

26. **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees", whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

## ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

Printed Name: _____
*[Please Complete]*

_____

Printed Name: _____
*[Please Complete]*

_____ (Seal)
Cecil Thomas                    -Borrower
                              *[Printed Name]*

_____ (Seal)
Pamela Thomas                   -Borrower
                              *[Printed Name]*

_____ (Seal)
                                -Borrower
                              *[Printed Name]*

_____ (Seal)
                                -Borrower
                              *[Printed Name]*

──────────── *[Acknowledgment on Following Page]* ────────────

Loan No: ████████████

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.— ‖‖‖‖‖‖‖‖‖‖‖‖‖‖ **Page 13 of 14**        MERS Modified Form 3048 01/01
www.compliancesource.com                                                          14301WA 08/00
                                                                          ©2000, The Compliance Source, Inc

State of Washington

County of __King__

§
§ ss.:
§

I certify that I know or have satisfactory evidence that    Cecil Thomas and Pamela Thomas

is the person who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in the instrument.

*[name of person]*

Dated: 3-6-05

(Seal)

*Lenneu Cmcdoal*
(Signature)

*NEOLPD 698*
(Title of Office)

*[Printed Name]*

*Kirkland*
(Place of Residence of Notary Public)

Loan No:

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                                         Page 14 of 14
www.compliancesource.com

MERS Modified Form 3048 01/01
14301WA 08/00
©2000, The Compliance Source, Inc

# ADJUSTABLE RATE RIDER
## (12 MAT Payment and Rate Caps)

Loan #:     122745166

THIS ADJUSTABLE RATE RIDER is made this      5th   day of March                , 2006  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
IndyMac Bank, F.S.B., a federally chartered savings bank
(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

15550 148th Ave NE, Woodinville, WA 98072

[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST
RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE
AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE.
THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE
AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT
STATED IN THE NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

I will make all payments under this Note in the form of cash, check or money order.

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of principal has been
paid. I will pay interest at a yearly rate of                 1.250 %. The interest rate I will
pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section  7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of May                ,2006  ,
and on that day every month thereafter. Each date on which my interest rate could change is
called an "Interest  Rate Change Date."  The new rate of interest will become effective on
each Interest Rate Change Date.

**MULTISTATE 12 MAT ADJUSTABLE RATE RIDER**

8480194  (0508)                          Page 1 of 5
                    VMP Mortgage Solutions, Inc. (800)521-7291                          **Form 3004**
                                                                                        **8/05**

**(C) Interest Rate Limit**
My interest rate will never be greater than          9.950          %.
**(D) Index**
    Beginning with the first Interest Rate Change Date, my Interest Rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" ("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index".
    If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.
    **(E) Calculation of Interest Rate Changes**
    Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding three and 650/1000ths
percentage point(s) (          3.650          %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3. PAYMENTS
    **(A) Time and Place of Payments**
    I will pay principal and interest by making payments every month.
    I will make my monthly payments on the first day of each month beginning on May 1          , 2006 . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on          April 1, 2036          , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826
or at a different place if required by the Note Holder.
    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments will be in the amount of U.S. $          1,333.01          . This amount may change.
    **(C) Payment Change Dates**
    My monthly payment may change as required by Section 3(D) below beginning on the first day of May 1          , 2007 , and on that day every 12th month thereafter. Each

Loan No: [redacted]

8480194  (0508)          Page 2 of 5          Form 3004
8/05

of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

### (E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to one hundred TEN AND NO/100THS                                    percent (      110.000      %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

### (G) Required Full Payment

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

Loan No: 122749196

8480194  (0508)                          Page 3 of 5                          Form 3004
                                                                                8/05

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan No: ~~████████~~

**8480194** (0508)                      Page 4 of 5                      **Form 3004**
**8/05**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
Cecil Thomas              -Borrower        Pamela Thomas              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

Loan No: ▮▮▮▮▮▮▮▮

**8480194** (0508)                    Page 5 of 5                    **Form 3004**
                                                                        **8/05**

## EXHIBIT "A"

## LEGAL DESCRIPTION

The Westerly 250 feet of Tract 6, as measured along the Southerly line thereof, HOLLYWOOD TRACTS, according to the Plat thereof recorded in Volume 20 of Plats, Page 98, records of King County, Washington.

Situate in the County of King, State of Washington.

EXHIBIT C

**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do! ™*

O C W E N

1661 Worthington Road, Ste. 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

11/02/2016

Loan Number

Cecil Thomas
Pamela S Thomas
15844 148th Ave Ne
Woodinville, WA 98072

**Property Address:**
15844 148th Ave Ne
Woodinville, WA 98072

## NOTICE OF DEFAULT

### AVISO IMPORTANTE PARA PERSONAS QUE HABLAN ESPAÑOL:

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

Dear Customer(s),

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received an Order of Discharge in a Chapter 7 case filed under the Bankruptcy Code of the United States, this notice is not intended as an attempt to collect any debt from you personally. If you have received an Order of Discharge in a Chapter 11, 12 or 13 bankruptcy case, this notice is not an attempt to collect a pre-petition debt pursuant to a completed and confirmed Bankruptcy Plan. If the foregoing applies to you, this notice is sent to you only as a preliminary step to an "In Rem" foreclosure on the mortgage against the above-referenced property. Provisions may be contained within the mortgage/deed of trust that requires notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt contrary to any entered Bankruptcy Order of Discharge.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because we have not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contacts us immediately and provides us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

---

NMLS # 1852

DEMAND05BKDC_v2.7

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste. 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

Mortgage payments on the above referenced account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust. As of **11/02/2016**, the following amounts are past due:

| | |
|---|---|
| Principal and Interest | $83,708.41 |
| Interest Arrearage | $0.00 |
| Escrow | $0.00 |
| Late Charges | $0.00 |
| Insufficient Funds Charges | $0.00 |
| Fees / Expenses | $313.25 |
| Suspense Balance (CREDIT) | $1,491.45 |
| Interest Reserve Balance (CREDIT) | $0.00 |
| **TOTAL DUE** | **$82,530.21** |

On or before **12/09/2016**, payment may be received by us via MoneyGram, bank check, money order or certified funds for the entire total amount past due to the appropriate address listed at the bottom of pay two of this notice. Any amount(s) that become due in the interim must also be received.

If the account is not brought current in timely manner, it may result in our election to exercise our right to foreclose on the property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If the loan has already been accelerated and foreclosure proceedings have already begun, we will continue the foreclosure action (if possible). You may have the right to assert in court, the non-existence of a default or any other defense to acceleration and foreclosure.

We will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once written authorization has been obtained, as required by law.

After acceleration of the debt, but prior to foreclosure, the mortgage loan may be reinstated, depending on the terms of the note and mortgage, any payments received and/or any relevant prior court order. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the mortgage agreement, in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned, and will not stop any foreclosure proceedings that have begun. **PRIOR TO SUBMITTING A PAYMENT, PLEASE CALL US TO VERIFY THE EXACT AMOUNT PAST DUE ON THE ACCOUNT.**

NMLS # 1852

DEMAND05BKDC_v2.7

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.


Case 2:17-cv-01222-RSM   Document 53-2   Filed 02/25/18   Page 53 of 89

In addition, a HUD counseling agency may be able to provide assistance. To locate the HUD-approved counseling agency, call the HUD Housing Counseling Service at (800) 569-4287 or consult HUD's website at www.HUD.gov.

If you have any questions or concerns please call us toll-free at (800)746-2936. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET.

Failing to contact a housing counselor or attorney may result in the loss of certain opportunities, such as meeting with the lender or participating in mediation in front of a neutral third party.

**Attention Servicemembers and Dependents**: Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember, may be entitled to certain legal protections under the federal Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-597b) ("SCRA") regarding the servicemember's interest rate and foreclosure protections. SCRA and certain state laws provide important protections for you. If you are currently in the military service, or have been within the last twelve (12) months, please notify OCWEN immediately. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php. Military OneSource is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website. Homeowner counseling is also available at through HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact us toll-free at (800) 746-2936 if you have questions about your rights under SCRA.

To remedy this situation we want to assist in trying to reach that goal. OCWEN would like to present some of the alternatives that might be available regarding the delinquent mortgage loan. While our primary objective is the collection of past due amounts on the loan, we want to work to find the best available alternative to bring the mortgage loan obligation current.

Lakeisha Iles Has Been Assigned As Your Relationship Manager And Will Be Your Designated Representative For Resolution Inquiries And Submission Of Documents.

Sincerely,
Loan Servicing
Toll Free Phone: (800) 746-2936

**ADDRESS WRITTEN CORRESPONDENCE TO:**
Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736

NMLS # 1852                                                                                  DEMAND05BKDC_v2.7

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste. 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

## PAYMENT REMITTANCE INFORMATION

### (Always include loan number 7192240401 with any payment)

Certified Payment Methods

| Western Union | MoneyGram |
|---|---|
| **Code City:** OCWEN<br>**State:** Florida<br>**Reference:** Loan number 7192240401<br>**Agent Locator:** (800) 225-5227 | **Receiver Code:** 2355<br>**Payable to:** Ocwen Loan Servicing, LLC<br>**City, State:** Orlando, Florida<br>**Reference:** Loan number 7192240401<br>**Agent locator:** (800) 926-9400 |

| Mail a Money Order/Certified Check | Bank Wire |
|---|---|
| **For regular mail:**<br>Ocwen Loan Servicing, LLC<br>P.O. Box 660264<br>Dallas, TX 75266-0264<br><br>**For Overnight/Certified mail:**<br>Ocwen Loan Servicing, LLC<br>ATTN: Cashiering Department<br>Box # 660264<br>1010 W. Mockingbird Ln., Suite 100<br>Dallas, TX 75247 | **Bank:** Wells Fargo Bank, NA<br>**ABA:** 121000248<br>**Account Number:** 4124823352<br>**Account Name:** Ocwen Loan Servicing,  LLC<br>**Reference:** Loan number 7192240401 and<br>Property Address and Borrower Name<br>**Email:** wire details to Transferfunds@ocwen.com |

NMLS # 1852
DEMAND05BKDC_v2.7

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.

EXHIBIT D



**OCWEN**

**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL  33409
Toll Free: (800) 746 - 2936

Loan Number: ▇▇▇▇▇▇▇

12/21/2016

Daniel Rusuceanu

Property Address: 15844 148th Ave Ne, Woodinville, WA 98072
Requestor Email Address: drusuceanu@qualityloan.com

Borrower(s) Name: Cecil Thomas
Pamela S Thomas

## PAYOFF QUOTE
### VALID THROUGH 01/13/2017

Dear Daniel Rusuceanu,

Enclosed is a breakdown of the total amount required to pay off your loan on or before 01/13/2017. Payoff instructions are also provided for your convenience.

Important Note: If there is an escrow account associated with your loan for property taxes and/or insurance, we may need to pay the tax and/or insurance bill before this payoff quote expires on 01/13/2017. If so, we will add the amount paid to your loan payoff total.

Please be sure to continue making on-time payments until the loan is paid off to make sure there is no negative impact to your credit report.

| Description | Amount Due |
|---|---|
|  | $358,702.07 |
| Principal | $55,977.31 |
| Interest | $26.50 |
| Property Inspection Fee | $150.00 |
| Bankruptcy Consent Order | $150.00 |
| Adversary Proceeding | $88.00 |
| Satisfaction Cost | $450.00 |
| Foreclosure Fee | -$1,491.45 |
| Suspense Credit |  |

PAYOFFE

NMLS # 1852

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 5



### Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

| **Total Amount Due** | **$414,052.43** |
|---|---|

| | |
|---|---|
| Next Due Date | 04/01/2013 |
| Quoted Date | 12/21/2016 |
| Payoff Quote Expiration Date | 01/13/2017 |
| Grace Period End Date | 12/16/2016 |
| Original Principal Balance | $400,000.00 |

Given below is a breakdown of the interest that is shown above in the amount of $55,977.31 due on or before 01/13/2017. Please note that interest is generally charged in arrears. On a normal amortizing loan, the current month's payment will include the interest charges for the previous month. The unpaid principal balance is not the payoff amount.

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|---|---|---|---|---|---|---|
| 03/01/13 | 03/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 04/01/13 | 04/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 05/01/13 | 05/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 06/01/13 | 06/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 07/01/13 | 07/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 08/01/13 | 08/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 09/01/13 | 09/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 10/01/13 | 10/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 11/01/13 | 11/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 12/01/13 | 12/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 01/01/14 | 01/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 02/01/14 | 02/28/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 03/01/14 | 03/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 04/01/14 | 04/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 05/01/14 | 05/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 06/01/14 | 06/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 07/01/14 | 07/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 08/01/14 | 08/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 09/01/14 | 09/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 10/01/14 | 10/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 11/01/14 | 11/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 12/01/14 | 12/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 01/01/15 | 01/31/15 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|------|-----|-----------------|---------------|----------------|----------------|--------|
| 02/01/15 | 02/28/15 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 03/01/15 | 03/31/15 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 04/01/15 | 04/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 05/01/15 | 05/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 06/01/15 | 06/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 07/01/15 | 07/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 08/01/15 | 08/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 09/01/15 | 09/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 10/01/15 | 10/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 11/01/15 | 11/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 12/01/15 | 12/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 01/01/16 | 01/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 02/01/16 | 02/29/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 03/01/16 | 03/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 04/01/16 | 04/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 05/01/16 | 05/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 06/01/16 | 06/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 07/01/16 | 07/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 08/01/16 | 08/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 09/01/16 | 09/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 10/01/16 | 10/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 11/01/16 | 11/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 12/01/16 | 12/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 01/01/17 | 01/12/17 | $452.66 | 3.78580% | $358,702.07 | $37.72150800 | 12 |

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL  33409
Toll Free: (800) 746 - 2936

## PAYOFF REQUIREMENTS AND CONDITIONS

**Certified funds required for payoff.** Payoff funds must be sent via certified funds such as: Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check or Attorney's Escrow Check. Non-certified payments will be returned and the payoff will not be processed.

## HOW TO SEND PAYOFF FUNDS

- Wire transfers are preferred. Wire transfer is the fastest, safest and most convenient payment option. You may also save money on per diem interest because it's the fastest option.

- To make a wire transfer, provide the below information to your bank. You may also be able to process the transaction by visiting your bank's website or calling them directly.

- Be sure to always include the borrower's last name, property address and loan number on any remittances. If you are unable to wire transfer funds, send payment in certified funds by Overnight Mail as shown below.

**Payment Methods.**

| Preferred Option: Wire Transfer at Closing | |
|---|---|
| Make Payable to: | **Ocwen Loan Servicing, LLC** |
| Ocwen Account #: | **4124823352** |
| ABA Routing #: | **121000248** |
| Bank Address: | **Wells Fargo Bank, NA** |
| | **San Francisco, California** |
| Loan Number: | **Ocwen Loan 7192240401** |

| Overnight Mail |
|---|
| Mail Certified Funds Check to: |
| Ocwen Loan Servicing, LLC |
| Attention: Cashiering / Payoff Department |
| 1661 Worthington Road, Suite 100 |
| West Palm Beach, FL 33409 |
| Reference: Ocwen Loan 7192240401 |

**Payoff amount is subject to change.** To the extent permitted by law, we reserve the right to correct any portion of this statement at any time.

- All balances are subject to change as a result of any transactions, the assessment of any fees or any costs being incurred with respect to the account which occurs prior to the application of payoff funds. If the account is referred to foreclosure, becomes subject to a bankruptcy proceeding or has any other fees or costs assessed to it prior to the Payoff Quote Expiration Date, this payoff quote is deemed invalid and a new payoff quote will be provided to you.

- Similarly, if any payments applied to this account within the prior thirty (30) days of the date of this payoff quote are reversed for any reason, including but not limited to insufficient funds or a stop payment being placed on a check, this payoff quote is deemed invalid and a new payoff quote must be obtained from us to reflect the correct amount due and owing. Subsequent payoff quotes will reflect the full amount due.

**Overpayment or underpayment of payoff amount.** Upon receipt of payoff funds, we will verify all amounts due and contact the issuer of the funds in the event of any discrepancies. The payoff amount does not include any applicable positive escrow balance.

NMLS # 1852                                                                                                    PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

After the payoff funds have been applied and the account has been reconciled, any overpayment of funds will be returned to the borrower through regular mail within 20 days of the date the funds are received. Escrow account overages will be disbursed within 20 days. Please be aware that to the extent permitted by law, if the payoff funds received are less than the total amount necessary to pay the account in full, in the event there remain any amounts in escrow after the payment of taxes and insurance, then any escrow surplus funds remaining may be applied to the loan at payoff. If you do not want any remaining escrow surplus funds applied to the loan at payoff, please notify us within 5 days prior to submitting the payoff funds. You may email this notification to payoffs@ocwen.com or fax it to 407-737-6118. If escrow funds are insufficient to pay the account in full, we will return the funds and continue to accrue interest on the loan.

**Monthly payments due before payoff still must be paid by due date.** Issuance of this statement does not suspend the contractual requirement to make loan payments when due. If payoff funds are received after the expiration of the grace period, if such a period is applicable to this loan, a late charge will be due. Payment of all late charges will be required to be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust.

**Escrow disbursements will proceed until payoff funds received.** Issuing this payoff statement will not stop future escrow disbursements. Property taxes or insurance may be paid after this quote is issued. If such disbursements create escrow advances and change the amount due to satisfy the loan, they must be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust.

**Past due fees still apply.** If the account is past due, collection expenses and legal fees may be accruing. If this is an adjustable rate Note, the per diem may change prior to payoff.

**Deed release.** Upon receipt of the entire payoff amount, we will execute a release and discharge of the Deed of Trust/Mortgage and, if necessary, will file a withdrawal in connection with any legal action it has been taken to collect this obligation.

**Prepayment Penalty, customer responsibilities.** We undertake no obligation to investigate the circumstances surrounding the payoff of an account. As such, it is the customer's responsibility to notify us if the terms of the Note of Deed of Trust/Mortgage allow for waiver of the prepayment penalty in their circumstances and provide the requisite documentation to demonstrate waiver of a prepayment penalty in accordance with the terms of the Note or Deed of Trust/Mortgage. Such documentation must be provided to the Payoff Department at the address above within sixty (60) days following the date that the payoff was made.

**Please verify your Social Security Number for tax reporting.** Please visit our website at www.ocwencustomers.com to verify the social security number on file for the purposes of year-end tax reporting.

**For Questions.** If you have questions regarding this payoff quote, please contact our Customer Care Center at (800) 746-2936. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm or Sunday 9:00 am to 9:00 pm ET.

Sincerely,
Loan Servicing

---

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

# EXHIBIT E

**DECLARATION OF HOLDER OF NOTE**
**(Beneficiary Declaration)**

| | |
|---|---|
| Borrower(s): | PAMELA THOMAS, CECIL THOMAS |
| Date of Deed of Trust: | 3/5/2006 |
| Original Note Amount: | $400,000.00 |
| Property Address: | 15844 148th Ave NE, Woodinville, WA 98072 |

The undersigned, under penalty of perjury under the laws of the State of Washington, states that the below is true and correct:

1. I am employed as a ___Contract Management Coordinator___ of OCWEN LOAN SERVICING, LLC, and am authorized to make this declaration on behalf of OCWEN LOAN SERVICING, LLC. In this capacity, I have personal knowledge of the facts set forth in this Declaration.

2. DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-AR4 is the current owner of this note or other obligation secured by the above referenced deed of trust and has authorized OCWEN LOAN SERVICING, LLC to act on its behalf in rendering loan management services for this loan.

3. DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-AR4 is the actual holder of the Note evidencing the above –referenced loan.

4. The Trustee may rely upon this Declaration.

Dated:  1/23/2017

_Chastrie R Elol_   Chastrie R. Elol Contract Management Coordinator
By: OCWEN LOAN SERVICING, LLC, Attorney in-Fact for
DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee
for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4,
MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-
AR4

# EXHIBIT F

**Electronically Recorded**
**20170203000038**

SIMPLIFILE                    AST                16.00
Page 001 of   002
02/03/2017 08:28
King County, WA

When recorded return to:

Quality Loan Service Corp. of Washington
C/O Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

---

TS No.: **WA-16-756968-SW**                    Space above this line for recorders use only
Order No.:
APN: 340770003002

# Appointment of Successor Trustee

**NOTICE IS HEREBY GIVEN** that **QUALITY LOAN SERVICE CORPORATION OF WASHINGTON**, whose address is **108 1ˢᵗ Ave South, Suite 202, Seattle, Washington 98104** is hereby appointed Successor Trustee under that certain Deed of Trust dated **3/5/2006**, executed by **CECIL THOMAS AND PAMELA THOMAS, HUSBAND AND WIFE** as Grantor, in which **FIDELITY NATIONAL TITLE INSURANCE CO.** was named as Trustee, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK** as Beneficiary, and recorded on **3/10/2006**, as **Instrument No. 20060310001131** of Official Records. Whereas, **DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-AR4** is the present Beneficiary, the actual holder of the promissory note secured by the Deed of Trust, and desires to appoint and hereby does appoint QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as the new Trustee in place and stead of the present Trustee thereunder.

Said Deed of Trust Encumbers the real property situated in **KING** County, **Washington** and is fully described as:

The Westerly 250 feet of Tract 6, as measured along the Southerly line thereof, HOLLYWOOD TRACTS, according to the Plat thereof recorded in Volume 20 of Plats, Page 98, records of King County, Washington. Situate in the County of King, State of Washington.

And more commonly known as: **15844 148th Ave NE, Woodinville, WA 98072**

15844 148th Ave NE, Woodinville, WA 98072

NOW THEREFORE the undersigned, **DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-AR4,** hereby substitutes QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as Trustee under said Deed of Trust.

> **DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-AR4 By: Ocwen Loan Servicing, LLC its attorney-in-fact**

By: _____ 1/24/17

Evette Morales  Contract Management Coordinator

State of: **Florida**)

County of: **Palm Beach**)

On 01|24|17 Date before me, _____ Kerry Born _____ a notary public, personally appeared _____ Evette Morales _____, who _____ (type of Identification) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. **Personally Known To Me** (as 1·24·17)

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Kerry Born

**KERRY BORN**
Commission # FF 058377
My Commission Expires
September 29, 2017

15844 148th Ave NE, Woodinville, WA 98072

EXHIBIT G



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

02/16/2017

Loan Number: ████████████

Kathrina Estoque

Property Address: 15844 148th Ave Ne, Woodinville, WA 98072
Requestor Email Address: kestoque@qualityloan.com

Borrower(s) Name: Cecil Thomas
Pamela Thomas

## PAYOFF QUOTE
### VALID THROUGH 03/17/2017

Dear Kathrina Estoque,

Enclosed is a breakdown of the total amount required to pay off your loan on or before 03/17/2017. Payoff instructions are also provided for your convenience.

Important Note: If there is an escrow account associated with your loan for property taxes and/or insurance, we may need to pay the tax and/or insurance bill before this payoff quote expires on 03/17/2017. If so, we will add the amount paid to your loan payoff total.

Please be sure to continue making on-time payments until the loan is paid off to make sure there is no negative impact to your credit report.

| Description | Amount Due |
|---|---|
| Principal | $358,702.07 |
| Interest | $58,391.49 |
| Property Inspection Fee | $53.00 |
| Bankruptcy Consent Order | $150.00 |
| Adversary Proceeding | $150.00 |
| Title Search | $1,151.94 |
| Satisfaction Cost | $88.00 |
| Suspense Credit | -$1,491.45 |

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 5



### OCWEN Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

| Total Amount Due | $417,195.05 |
|---|---|

| | |
|---|---|
| Next Due Date | 04/01/2013 |
| Quoted Date | 02/16/2017 |
| Payoff Quote Expiration Date | 03/17/2017 |
| Grace Period End Date | 02/16/2017 |
| Original Principal Balance | $400,000.00 |

Given below is a breakdown of the interest that is shown above in the amount of $58,391.49 due on or before 03/17/2017. Please note that interest is generally charged in arrears. On a normal amortizing loan, the current month's payment will include the interest charges for the previous month. The unpaid principal balance is not the payoff amount.

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|---|---|---|---|---|---|---|
| 03/01/13 | 03/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 04/01/13 | 04/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 05/01/13 | 05/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 06/01/13 | 06/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 07/01/13 | 07/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 08/01/13 | 08/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 09/01/13 | 09/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 10/01/13 | 10/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 11/01/13 | 11/30/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 12/01/13 | 12/31/13 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 01/01/14 | 01/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 02/01/14 | 02/28/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 03/01/14 | 03/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 04/01/14 | 04/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 05/01/14 | 05/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 06/01/14 | 06/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 07/01/14 | 07/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 08/01/14 | 08/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 09/01/14 | 09/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 10/01/14 | 10/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 11/01/14 | 11/30/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 12/01/14 | 12/31/14 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 01/01/15 | 01/31/15 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL  33409
Toll Free: (800) 746 - 2936

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|------|-----|-----------------|---------------|----------------|-----------------|--------|
| 02/01/15 | 02/28/15 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 03/01/15 | 03/31/15 | $1,270.40 | 4.25000% | $358,702.07 | $42.34677200 | 30 |
| 04/01/15 | 04/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 05/01/15 | 05/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 06/01/15 | 06/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 07/01/15 | 07/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 08/01/15 | 08/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 09/01/15 | 09/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 10/01/15 | 10/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 11/01/15 | 11/30/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 12/01/15 | 12/31/15 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 01/01/16 | 01/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 02/01/16 | 02/29/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 03/01/16 | 03/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 04/01/16 | 04/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 05/01/16 | 05/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 06/01/16 | 06/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 07/01/16 | 07/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 08/01/16 | 08/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 09/01/16 | 09/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 10/01/16 | 10/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 11/01/16 | 11/30/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 12/01/16 | 12/31/16 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 01/01/17 | 01/31/17 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 02/01/17 | 02/28/17 | $1,131.65 | 3.78580% | $358,702.07 | $37.72150800 | 30 |
| 03/01/17 | 03/16/17 | $603.54 | 3.78580% | $358,702.07 | $37.72150800 | 16 |

NMLS # 1852                                                                                                      PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

## PAYOFF REQUIREMENTS AND CONDITIONS

**Certified funds required for payoff.** Payoff funds must be sent via certified funds such as: Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check or Attorney's Escrow Check. Non-certified payments will be returned and the payoff will not be processed.

### HOW TO SEND PAYOFF FUNDS

- Wire transfers are preferred. Wire transfer is the fastest, safest and most convenient payment option. You may also save money on per diem interest because it's the fastest option.

- To make a wire transfer, provide the below information to your bank. You may also be able to process the transaction by visiting your bank's website or calling them directly.

- Be sure to always include the borrower's last name, property address and loan number on any remittances. If you are unable to wire transfer funds, send payment in certified funds by Overnight Mail as shown below.

**Payment Methods.**

| Preferred Option: Wire Transfer at Closing | | Overnight Mail |
|---|---|---|
| Make Payable to: | **Ocwen Loan Servicing, LLC** | Mail Certified Funds Check to: |
| Ocwen Account #: | **4124823352** | Ocwen Loan Servicing, LLC |
| ABA Routing #: | **121000248** | Attention: Cashiering / Payoff Department |
| Bank Address: | **Wells Fargo Bank, NA** | 1661 Worthington Road, Suite 100 |
| | **San Francisco, California** | West Palm Beach, FL 33409 |
| Loan Number: | **Ocwen Loan 7192240401** | Reference: Ocwen Loan 7192240401 |

**Payoff amount is subject to change.** To the extent permitted by law, we reserve the right to correct any portion of this statement at any time.

- All balances are subject to change as a result of any transactions, the assessment of any fees or any costs being incurred with respect to the account which occurs prior to the application of payoff funds. If the account is referred to foreclosure, becomes subject to a bankruptcy proceeding or has any other fees or costs assessed to it prior to the Payoff Quote Expiration Date, this payoff quote is deemed invalid and a new payoff quote will be provided to you.

- Similarly, if any payments applied to this account within the prior thirty (30) days of the date of this payoff quote are reversed for any reason, including but not limited to insufficient funds or a stop payment being placed on a check, this payoff quote is deemed invalid and a new payoff quote must be obtained from us to reflect the correct amount due and owing. Subsequent payoff quotes will reflect the full amount due.

**Overpayment or underpayment of payoff amount.** Upon receipt of payoff funds, we will verify all amounts due and contact the issuer of the funds in the event of any discrepancies. The payoff amount does not include any applicable positive escrow balance.

NMLS # 1852                 PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

---

After the payoff funds have been applied and the account has been reconciled, any overpayment of funds will be returned to the borrower through regular mail within 20 days of the date the funds are received. Escrow account overages will be disbursed within 20 days. Please be aware that to the extent permitted by law, if the payoff funds received are less than the total amount necessary to pay the account in full, in the event there remain any amounts in escrow after the payment of taxes and insurance, then any escrow surplus funds remaining may be applied to the loan at payoff. If you do not want any remaining escrow surplus funds applied to the loan at payoff, please notify us within 5 days prior to submitting the payoff funds. You may email this notification to payoffs@ocwen.com or fax it to 407-737-6118. If escrow funds are insufficient to pay the account in full, we will return the funds and continue to accrue interest on the loan.

**Monthly payments due before payoff still must be paid by due date.** Issuance of this statement does not suspend the contractual requirement to make loan payments when due. If payoff funds are received after the expiration of the grace period, if such a period is applicable to this loan, a late charge will be due. Payment of all late charges will be required to be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust.

**Escrow disbursements will proceed until payoff funds received.** Issuing this payoff statement will not stop future escrow disbursements. Property taxes or insurance may be paid after this quote is issued. If such disbursements create escrow advances and change the amount due to satisfy the loan, they must be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust.

**Past due fees still apply.** If the account is past due, collection expenses and legal fees may be accruing. If this is an adjustable rate Note, the per diem may change prior to payoff.

**Deed release.** Upon receipt of the entire payoff amount, we will execute a release and discharge of the Deed of Trust/Mortgage and, if necessary, will file a withdrawal in connection with any legal action if it has been taken to collect this obligation.

**Prepayment Penalty, customer responsibilities.** We undertake no obligation to investigate the circumstances surrounding the payoff of an account. As such, it is the customer's responsibility to notify us if the terms of the Note of Deed of Trust/Mortgage allow for waiver of the prepayment penalty in their circumstances and provide the requisite documentation to demonstrate waiver of a prepayment penalty in accordance with the terms of the Note or Deed of Trust/Mortgage. Such documentation must be provided to the Payoff Department at the address above within sixty (60) days following the date that the payoff was made.

**Please verify your Social Security Number for tax reporting.** Please visit our website at www.ocwencustomers.com to verify the social security number on file for the purposes of year-end tax reporting.

**For Questions.** If you have questions regarding this payoff quote, please contact our Customer Care Center at (800) 746-2936. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm or Sunday 9:00 am to 9:00 pm ET.

Sincerely,
Loan Servicing

---

NMLS # 1852                                                                                                    PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

EXHIBIT H



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

02/16/2017                                                        Loan Number: ~~█████████~~

Kathrina Estoque

Property Address: 15844 148th Ave Ne
Woodinville, WA 98072
Requestor Email Address: kestoque@qualityloan.com
Borrower(s) Name: Cecil Thomas
Pamela Thomas

## LOAN REINSTATEMENT QUOTE

Dear Kathrina Estoque,

See below for a breakdown of the total amount required to reinstate the above referenced loan.

**IMPORTANT!** If the loan is not reinstated and the payments fall further behind, we may refer the mortgage to foreclosure, or if the loan is already in foreclosure, we may continue with foreclosure proceedings.

The reinstatement amount is good through: 03/17/2017.If the account is reinstated, the next regular payment is due on: 04/01/2017

| Description | Amount |
|---|---|
| Principal Payment | 36,280.71 |
| Interest Due | 55,345.26 |
| Suspense Balance | 1,491.45- |
| Total Amount Due to Reinstate | $90,134.52 |

**Please make note of the other amounts due on the loan. Repayment of these amounts is not necessary to reinstate the loan at this time however, it is required to fulfill the debt obligation under the note and the mortgage.**

| Description | Amount |
|---|---|
| Late Charge Due | 197.94 |
| Property Inspection Fee | 53.00 |
| Bankruptcy Consent Order | 150.00 |
| Adversary Proceeding | 150.00 |
| Title Search | 1,151.94 |

NMLS # 1852                                                        REINSTE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 3



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners Is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

| Description | Amount |
|---|---|
| Total Other Amounts Outstanding and Due | $1,702.88 |

NMLS # 1852                                                                                    REINSTE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

---

### IMPORTANT NOTICES

- Total other amount due calculation: The total other amounts outstanding and due includes expenses we have incurred in connection with the mortgage obligations. These expenses may include attorney fees and costs, property preservation expenses, inspections, and/or other expenses resulting from the failure to pay the mortgage on time.

- Possible additional fees/costs: If the loan is/was recently past due, additional fees and costs may have already been incurred on the loan but not yet billed to the account. These fees and expenses, if any, will be billed to the account once they are verified and paid by Ocwen.

- Fees may be accruing: If the account is past due, additional collection expenses and legal fees may continue to accrue until the account is reinstated.

- Certified funds are required if the loan is greater than 90 days delinquent. Payment must be received in one of the following forms: Cashier's Check, Bank Certified Check, Money Order, Title Company Check, Attorney's Escrow Check or via Wire Transfer. All other forms of payment will be returned and the reinstatement amount will not be accepted.

### CONVENIENT PAYMENT OPTIONS

| Wire Transfer | | By Mail* |
|---|---|---|
| **Bank:** | Wells Fargo Bank, NA | **Regular Payments:** |
| **ABA:** | 121000248 | Ocwen Loan Servicing, LLC |
| **Account Number:** | 4124823352 | P.O. Box 660264 |
| **Account Name:** | Ocwen Loan Servicing, LLC | Dallas, TX 75266-0264 |
| **Reference:** | Ocwen Loan # 7192240401, Property | **Express Payments:** |
| | Address, and Borrower's Name | Ocwen Loan Servicing, LLC |
| | | Box # 660264 |
| **Email:** | Wire details to Transferfunds@ocwen.com | 1010 W. Mockingbird Lane, Suite 100 |
| | | Dallas, TX 75247 |

*All checks/money orders should be made payable to: Ocwen Loan Servicing, LLC. Please make sure to include the Ocwen account number, borrower's name and property address on the front of your check/money order.

### CONTACT US

If you are experiencing a financial hardship or have questions regarding this loan reinstatement quote, please contact our Customer Care Center at (800) 746-2936. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET.

Christopher Bechert has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents. To make an appointment to speak to your assigned relationship manager, please contact our Customer Care Center.

Sincerely,
Loan Servicing

---

NMLS # 1852                                                                                                          REINSTE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

EXHIBIT I

# NOTICE OF DEFAULT

Pursuant to the Revised Code of Washington 61.24, et seq.

To:     **CECIL THOMAS AND PAMELA THOMAS, HUSBAND AND WIFE**

T.S. No.:   **WA-16-756968-SW**

### THIS NOTICE IS ONE STEP IN A PROCESS THAT COULD RESULT IN YOUR LOSING YOUR HOME.

You may be eligible for mediation in front of a neutral third party to help save your home.

**CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you might benefit. Mediation **MUST** be requested between the time you receive the Notice of Default and no later than twenty days after the Notice of Trustee Sale is recorded.

**DO NOT DELAY.** If you do nothing, a notice of sale may be issued as soon as 30 days from the date of this notice of default. The notice of sale will provide a minimum of 120 days' notice of the date of the actual foreclosure sale.

**BE CAREFUL** of people who claim they can help you. There are many individuals and businesses that prey upon borrowers in distress. **REFER TO THE CONTACTS BELOW** for sources of assistance.

### SEEKING ASSISTANCE

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Toll-free: **1-877-894-HOME  (1-877-894-4663)** or Web site: http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm.

The United States Department of Housing and Urban Development: Toll-free: **1-800-569-4287** or National Web Site: http://portal.hud.gov/hudportal/HUD or for Local counseling agencies in Washington: http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc.

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: **1-800-606-4819** or Web site: http://nwjustice.org/what-clear.

The current owner of the Note secured by the Deed of Trust is:

**DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-AR4**

1761 East St Andrew Place

Santa Ana, CA 92705

TS No.: **WA-16-756968-SW**

The Loan Servicer Ocwen Loan Servicing, LLC is managing your loan.  For information about your loan you should contact:

Ocwen Loan Servicing, LLC
3451 Hammond Avenue
Suite 150
Waterloo, IA 50704

1-800-746-2936

1.    DEFAULT:

You are hereby notified that the Beneficiary has declared you in default on the obligation secured by a Deed of Trust recorded on **3/10/2006** in Auditor's File No. **20060310001131,**       Records of **KING** County, Washington, which Deed of Trust encumbers the following described real property:

The Westerly 250 feet of Tract 6, as measured along the Southerly line thereof, HOLLYWOOD TRACTS, according to the Plat thereof recorded in Volume 20 of Plats, Page 98, records of King County, Washington. Situate in the County of King, State of Washington.

Tax Parcel No. **340770-0030-02**

Commonly known as: 15844 148th Ave NE, Woodinville, WA 98072

2.    STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNT IN ARREARS:

The present beneficiary under said Deed of Trust alleges that you or your successors in interest are in default for the following reasons:

Failure to make the 4/1/2013 payment of principal and/or interest and all subsequent payments, together with late charges, impounds, advances, taxes, delinquent payments on senior liens, or assessments, if any.  To wit:

| Payment Information | | |
|---|---|---|
| From | Through | Total Payments |
| 4/1/2013 | 3/17/2017 | $90,134.52 |

| Late Charges | | |
|---|---|---|
| From | Through | Total Late Charges |
| 4/1/2013 | 3/17/2017 | $197.94 |

| Beneficiary's Advances, Costs, And Expenses | |
|---|---|
| Title Search | $1,151.94 |
| Property Inspection | $53.00 |
| Bankruptcy Fees Costs incurred | $300.00 |
| Total Advances: | $1,504.94 |

TS No.: **WA-16-756968-SW**

Promissory Note Information:

| | |
|---|---|
| Note Dated: | 3/5/2006 |
| Note Amount: | $400,000.00 |
| Note Maturity Date: | 4/1/2036 |
| Interest Paid To: | 3/1/2013 |
| Next Due Date: | 4/1/2013 |

3.    OTHER CHARGES, COSTS AND FEES:

In addition to the amounts in arrears specified above, you are or may be obligated to pay the following charges, costs and fees to cure the default under the Deed of Trust if cure is made before recording the Notice of Trustee's Sale:

| No. | Description | Amount |
|---|---|---|
| a. | Cost of title report for foreclosure: | $0.00 |
| b. | Service or posting Notice of Default: | $50.00 |
| c. | Postage: | $19.52 |
| d. | Attorney Fee: | $0.00 |
| e. | Trustee's Fee: | $450.00 |
| f. | Inspection Fee: | $0.00 |
| g. | Recording Fees: | $0.00 |
| | TOTAL CHARGES, COSTS AND FEES: | $519.52 |

4.    **REINSTATEMENT: IMPORTANT! PLEASE READ!**

UNTIL SUCH TIME AS A NOTICE OF TRUSTEE'S SALE IS RECORDED, THE ESTIMATED TOTAL AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST IS THE SUM OF PARAGRAPHS 2 AND 3 IN THE AMOUNT OF **$92,356.92**, PLUS ANY MONTHLY PAYMENTS, LATE CHARGES, OR BENEFICIARY COSTS WHICH HAVE BECOME DUE SINCE THE DATE OF THIS NOTICE OF DEFAULT.  Any new defaults not involving payment of money that occur after the date of this notice must also be cured in order to effect reinstatement.  **In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the trustee before the time you tender reinstatement so that you may be advised of the exact amount you will be required to pay.**

Payment must be made in the full amount by certified funds, and delivered or mailed as specified by the Beneficiary.  Personal checks will not be accepted.

Reinstatement monies may be tendered to:
Ocwen Loan Servicing, LLC

| Reinstatement monies may be mailed to: | Reinstatement monies may be dropped off at: |
|---|---|
| Quality Loan Service Corp. of Washington | Quality Loan Service Corp. of Washington |
| C/O Quality Loan Service Corporation | 108 1st Ave South, Suite 202 |
| 411 Ivy Street, San Diego, CA 92101 | Seattle, WA 98104 |
| | |
| For questions call toll-free: (866) 645-7711 | For questions call toll-free: (866) 925-0241 |

If your default included a default other than failure to pay payments when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

TS No.: **WA-16-756968-SW**

5.    CONSEQUENCES OF DEFAULT:

a.    Failure to cure said alleged default within thirty days of the date of mailing of this notice, or if personally served, within thirty days of the date of personal service hereof, may lead to recordation, transmittal and publication of a Notice of Sale, and that the property described herein may be sold at public auction at a date not less than one hundred fifty days from the date of service of this notice.

b.    The effect of the recordation, transmittal and publication of a notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the grantor's property for sale.

c.    Notwithstanding a future recordation of a Notice of Trustee's Sale, you may reinstate the deed of trust, and cure the default described above on or before the eleventh (11th) day before the Trustee's Sale of the property at public auction.

d.    The effect of the sale of the grantor's property by the trustee will be to deprive the grantor or his successor in interest and all those who hold by, through or under him of all their interest in the property described herein.

6.    RECOURSE TO COURTS:

The grantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground;

7.    DOCUMENTS ATTACHED:

•    Beneficiary or Authorized Agent's Foreclosure Loss Mitigation Form declaring compliance with RCW 61.24.031.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: 2/21/2017              Quality Loan Service Corp. Of Washington, Trustee

_____

Mikyas Ayele, Assistant Secretary

Borrower Name:   **Cecil Thomas**
                 **Pamela S Thomas**

Loan Number:     ███████████

## FORECLOSURE LOSS MITIGATION FORM

**Please select applicable option(s) below.**

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that [check the applicable box and fill in any blanks so that the beneficiary, authorized agent, or trustee can insert, on the beneficiary's behalf, the applicable declaration in the notice of default required under chapter 61.24 RCW]:

(1) [ ] The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, RCW 61.24.031 (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure") and the borrower responded but did not request a meeting.

(2) [ ] The beneficiary or beneficiary's authorized agent has contacted the borrower as required under RCW 61.24.031 and the borrower or the borrower's designated representative requested a meeting. A meeting was held on (insert date, time, and location/telephonic here) in compliance with RCW 61.24.031.

(3) [ ] The beneficiary or beneficiary's authorized agent has contacted the borrower as required in RCW 61.24.031 and the borrower or the borrower's designated representative requested a meeting. A meeting was scheduled for (insert date, time, and location/telephonic here) and neither the borrower nor the borrower's designated representative appeared.

(4) [X] The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in RCW 3 61.24.031(5) and the borrower did not respond.

(5) [ ] The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee.

Additional Optional Explanatory Comments:

Dated: 2/17/17

**Angel Ramos**
Contract Management Coordinator
Ocwen Loan Servicing, LLC. as Servicer for DEUTSCHE BANK
NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX
MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-
THROUGH CERTIFICATES Series 2006-AR4

11799

this page intentionally left blank

EXHIBIT J

**Electronically Recorded**
**20170411001651**

SIMPLIFILE                    NTS                    75.00
Page 001 of    003
04/11/2017 04:21
King County, WA

WHEN RECORDED MAIL TO:
**Quality Loan Service Corp. of Washington**
**C/O Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**

---

TS No.: **WA-16-756968-SW**                    SPACE ABOVE THIS LINE FOR RECORDER'S USE
APN No.: **340770-0030-02**
Title Order No.:
Deed of Trust Grantor(s): **PAMELA THOMAS, CECIL THOMAS**
Deed of Trust Grantee(s): **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK**
Deed of Trust Instrument/Reference No.: **20060310001131**

## NOTICE OF TRUSTEE'S SALE
Pursuant to the Revised Code of Washington 61.24, et seq.

I.     **NOTICE IS HEREBY GIVEN** that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on **8/11/2017**, at **10:00 AM At the 4th Ave entrance to the King County Administration Building, located one block east of the Courthouse, 500 4th Ave, Seattle, WA 98104** sell at public auction to the highest and best bidder, payable in the form of credit bid or cash bid in the form of cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of **KING**, State of Washington, to-wit:

**The Westerly 250 feet of Tract 6, as measured along the Southerly line thereof, HOLLYWOOD TRACTS, according to the Plat thereof recorded in Volume 20 of Plats, Page 98, records of King County, Washington. Situate in the County of King, State of Washington.**

More commonly known as: **15844 148th Ave NE, Woodinville, WA 98072**

which is subject to that certain Deed of Trust dated **3/5/2006**, recorded **3/10/2006**, under Instrument No. **20060310001131**    records of KING County, Washington, from **CECIL THOMAS AND PAMELA THOMAS, HUSBAND AND WIFE**, as grantor(s), to **FIDELITY NATIONAL TITLE INSURANCE CO.**, as original trustee, to secure an obligation in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK**, as original beneficiary, the beneficial interest in which was subsequently assigned to **DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-AR4**, the Beneficiary, under an assignment recorded under Auditors File Number **20170111000431**

II.     No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.     The default(s) for which this foreclosure is made is/are as follows: Failure to pay when due the following amounts which are now in arrears: **$95,355.70.**

IV.    The sum owing on the obligation secured by the Deed of Trust is: The principal sum of **$358,702.07**, together with interest as provided in the Note from 3/1/2013 on, and such other costs and fees as are provided by statute.

V.    The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on **8/11/2017**. The defaults referred to in Paragraph III must be cured by 7/31/2017 (11 days before the sale date), or by other date as permitted in the Note or Deed of Trust, to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before **7/31/2017** (11 days before the sale), or by other date as permitted in the Note or Deed of Trust, the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashiers or certified checks from a State or federally chartered bank. The sale may be terminated any time after the 7/31/2017 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.    A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower(s) and Grantor(s) by both first class and certified mail, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting. The list of recipients of the Notice of Default is listed within the Notice of Foreclosure provided to the Borrower(s) and Grantor(s). These requirements were completed as of **2/22/2017**.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.    The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.    Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.    NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME.**

You have only 20 DAYS from the recording date of this notice to pursue mediation.

**DO NOT DELAY. CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you are eligible and it may help you save your home. See below for safe sources of help.

**SEEKING ASSISTANCE**

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Toll-free: **1-877-894-HOME (1-877-894-4663)** or Web site: http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm.

The United States Department of Housing and Urban Development: Toll-free: **1-800-569-4287** or National Web site: http://portal.hud.gov/hudportal/HUD or for Local counseling agencies in Washington: http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: **1-800-606-4819** or Web site: http://nwjustice.org/what-clear.

**Additional disclaimers provided by the Trustee:** If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the noteholders rights against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

Dated:

4/11/2017

Quality Loan Service Corp. of Washington, as Trustee
By: Lauren Esquivel, Assistant Secretary

Trustee's Mailing Address:
Quality Loan Service Corp. of Washington
C/O Quality Loan Service Corp.
411 Ivy Street, San Diego, CA 92101
(866) 645-7711

Trustee's Physical Address:
Quality Loan Service Corp. of Washington
108 1st Ave South, Suite 202
Seattle, WA 98104
(866) 925-0241

**Sale Line: 916-939-0772 or Login to: http://wa.qualityloan.com**
**Trustee Sale Number: WA-16-756968-SW**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: **California**)
County of: **San Diego**)

Martha E. Sanchez

On APR 1 1 2017 before me, _____ a notary public, personally appeared Lauren Esquivel , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          (Seal)

Signature          Martha E. Sanchez

MARTHA E. SANCHEZ
Notary Public - California
San Diego County
Commission # 2165727
My Comm. Expires Sep 24, 2020

EXHIBIT K

WHEN RECORDED MAIL TO:
**Quality Loan Service Corp. of Washington**
**C/O Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**

---

T.S. No.:  WA-16-756968-SW
Order No.:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE

APN No.: 340770-0030-02

**CECIL THOMAS AND PAMELA THOMAS, HUSBAND AND WIFE** is the grantor, and **FIDELITY NATIONAL TITLE INSURANCE CO.** is the original trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK** is the original beneficiary under that certain deed of trust dated **3/5/2006**, and recorded on **3/10/2006** under Auditor's File No. **20060310001131**     records of **KING** County, Washington.

**QUALITY LOAN SERVICE CORPORATION OF WASHINGTON**, trustee, hereby discontinues the trustee's sale set by the Notice of Trustee's Sale recorded on **04/11/2017**, under Auditors Number **20170411001651** records of **KING County, Washington.**

**Said Deed of Trust encumbers the real property fully described as:**

The Westerly 250 feet of Tract 6, as measured along the Southerly line thereof, HOLLYWOOD TRACTS, according to the Plat thereof recorded in Volume 20 of Plats, Page 98, records of King County, Washington.  Situate in the County of King, State of Washington.

And more commonly known as: **15844 148th Ave NE, Woodinville, WA 98072**

T.S. No.:  WA-16-756968-SW

This discontinuance shall not be construed as waiving any breach or default under the above referenced deed of trust, or as impairing any right or remedy thereunder, or as modifying or altering in any respect any of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election to not allow the sale to be made pursuant to the above referenced Notice of Trustee's Sale.

Dated: 12/4/2017

Quality Loan Service Corporation of Washington

By: Kathrina Estoque
Its: Assistant Secretary

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: Washington )
County of: King )

On 12.4.17 before me, **Meesha Batson** a notary public, personally appeared Kathrina Estoque, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of Washington that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          (Seal)

Signature

**Meesha Batson**

MEESHA BATSON
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
AUGUST 9, 2021